UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS VONTZ,

    Plaintiff,

v.

JOSHUA HOTALING

    Defendant.
_____/

Case No. 2:19-cv-12735
District Judge Terrence G. Berg
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT JOSHUA HOTALING'S MOTION FOR SUMMARY JUDGMENT (ECF No. 117)

I.     Introduction

This is a pretrial detainee civil rights case under 42 U.S.C. § 1983. Plaintiff Nicholas Vontz (Vontz), proceeding *pro se*, filed a complaint alleging that during his confinement at the Monroe County Jail (MCJ) as a pretrial detainee, defendants violated his constitutional rights. All defendants except Joshua Hotaling (Hotaling) have been dismissed. *See* ECF Nos. 101, 111. Hotaling was not named as a defendant until Vontz filed the third amended complaint on December 15, 2021. *See* ECF No. 86.

All pretrial matters were referred to the undersigned. (ECF No. 18). Before the Court, is Hotaling's motion for summary judgment, (ECF No. 117), which is

1

fully briefed, (ECF Nos. 119, 120, 121). For the reasons that follow, the undersigned RECOMMENDS that Hotaling's motion be GRANTED and Vontz's remaining claims be DISMISSED WITH PREJUDICE.

## II. Background

### A. The Third Amended Complaint

In the third amended complaint, Vontz made the following allegations against Hotaling:[1]

Vontz says that Hotaling was at all relevant times a social worker at the MCJ where Vontz was incarcerated. (ECF No. 86, PageID.1691).

On February 5, 2018, Vontz was arrested "and transferred to MCJ after a failed suicide attempt." (*Id.*, PageID.1692). He was housed in an observational cell on suicide prevention watch until he posted bond on February 7, 2018, at which point he was released. (*Id.*).

Approximately a month later, on March 9, 2018, Vontz was re-arrested and returned to MCJ where he was again placed on suicide watch "after having suffered a severe anxiety attack." He adds that "[a]t no time did [he] communicate suicidal thoughts, only acute severe anxiety." (*Id.*, PageID.1693). He alleges that

---

[1] Vontz filed multiple amendments to the original September 19, 2019 complaint. His allegations are drawn exclusively from the December 15, 2021 complaint, which is the most recently amended version. *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) ("An amended complaint supersedes an earlier complaint for all purposes.").

for three days he was "forced to lay on a bare concrete floor in temperatures low enough to see his breath, exacerbating the pain from his arthritic joints." (*Id*.).

Three days later, on March 12, 2018, Hotaling was removed Vontz from suicide watch and either forged or participated in the forgery of Vontz's signature on a release from suicide precautions form. (*Id*., PageID.1694). Between March 13 and April 30, 2018, Vontz "sent numerous requests" to speak to Hotaling, but each was refused, with Hotaling responding at one point "what do you want Nick" (*Id*.). Finally, on May 20, 2018, Hotaling interviewed Vontz and Vontz explained that he was experiencing "panic attacks, severe anxiety, depression, and nightmares." (*Id*.). Hotaling told Vontz that because of funding issues, MCJ did not employ an on-site psychologist and that Vontz's symptoms did not warrant a referral to an outside provider. (*Id*., PageID.1694-1695). Vontz continued to suffer from medication side-effects such as "anxiety, depression, mania, memory loss/confusion, delirium, and impaired thinking," but was unable to speak to mental health staff despite numerous requests. (*Id*., PageID.1695).

B.   Evidence Presented by Hotaling

In support of his motion, Hotaling relies on his affidavit and records from the MCJ relating to Vontz, (ECF No. 117-1), Vontz's jail and community mental health records, (ECF Nos. 74-3, 74-4), Vontz's deposition, (ECF No. 75-2), and

3

Vontz's inmate kites,[2] (ECF No. 75-7).

Hotaling notes that after Vontz's initial arrest and booking at MCJ, Vontz told a Monroe Community Mental Health employee that although he was tearful and sad, he did not want to kill himself.  (ECF No. 74-4, PageID.1042).  The employee noted that Vontz had been diagnosed with recurrent, moderate major depressant disorder, irritability and anger, and uncomplicated opioid abuse, and did not present an imminent threat to himself at that time.  (*Id.*).

On March 10, 2018, after Vontz had been released on bond and then arrested again for aggravated stalking, Michael Mitcheff, D.O. (Dr. Mitcheff) (a former defendant in this matter) directed that Vontz be placed on suicide watch.  (ECF No. 74-3, PageID.1012).  Vontz alleged that the directive was unnecessary, as he had not communicated any suicidal thoughts.  (ECF No. 86, PageID.1693).

On March 12, 2018, Vontz met with Hotaling, a Limited Licensed Professional Counselor (LLPC) from Monroe Community Mental Health Authority, who was assigned to work with detainees at MCJ.  (ECF No. 117-1, PageID.2253).  At his deposition, Vontz testified that he told Hotaling he was having panic attacks and anxiety attacks, nightmares, trouble sleeping, and

---

[2] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance. *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

oversleeping, but was not experiencing suicidal thoughts, though Vontz disputes the date that this conversation occurred. (ECF No. 75-2, PageID.1178). Hotaling noted Vontz's symptoms, concluded that he was not suicidal or homicidal, and agreed to meet with him to continue to monitor his condition. (ECF No. 117-1, PageID.2257).

> In an emergency note dated March 12, 2018, Hotaling wrote:
>
> Writer [Hotaling] meets Nicholas [Vontz] in the Monroe County Jail as he was placed on suicide watch by CO. . . . Nicholas denied any [suicidal ideation] or [homicidal ideation] at this time. Nicholas reported that he is very overwhelmed right now and just has some racing thoughts right now. Writer and Nicholas explore[d] some coping skills he could utilize while being in jail. Nicholas reported he would try an [sic] use them. Nicholas again denied any [suicidal ideation] or [homicidal ideation] at this time. Nicholas stated he would try and use them. Nicholas['] next arraignment is Monday March 13. Writer will continue to follow up and monitor as needed.

(*Id*.). The Jail Medical Records, in a note dated March 13, 2013, state:

> Patient [Vontz] was seen today by Josh [Hotaling] with [Community Mental Health] and talked to patient about his mental health and where his mind was at today. Patient stated "I am not having thoughts of harming myself or anyone else in this jail." Patient is dressed in a green suicide suite [sic] and has direct eye contact, gait is steady patient has good outlook on life at this time. Patient has no thoughts of harming self or harming anyone.

(ECF No. 74-3, PageID.1021).

One day later, on March 13, 2018, Dr. Mitcheff ordered Vontz to be cleared from suicide precautions. (*Id*.). Vontz alleges that his own signature on the release from suicide precautions form was forged, and that Hotaling either forged his name

5

himself or had knowledge that a member of the medical staff forged it. *See* ECF No. 86, PageID.1694; ECF No. 75-2, PageID.1160, 1179.

Hotaling met with Vontz again on April 20, 2018. (ECF No. 117-1, PageID.2259). Vontz's presenting problem was that he was "ASKING TO SPEAK TO JOSH [HOTALING] AGAIN STILL HAVEN'T SEEN HIM." (*Id.*, PageID.2260). Vontz reported that he was "experiencing a lot of anxiety and stress due to being in jail and facing prison time" and that "his sleeping [was] very messed up and his appetite [was] off." (*Id.*). He denied suicidal or homicidal ideation at that time, but noted suicide attempts in the past. (*Id.*). Hotaling documented that Vontz had been prescribed Remeron (an anti-depressant) by the Jail Medical Staff and was in no danger of running out of medication. (*Id.*).

According to the jail kite records, Vontz reached out on April 30, 2018 via kite requesting to speak to Hotaling again. (ECF No. 75-7, PageID.1318). Hotaling responded, "[w]hat do you need Nick?" to which Vontz did not reply. (*Id.*). After receiving Hotaling's response, Vontz "abandoned further futile attempts to see a mental health worker." (ECF No. 75-2, PageID.1217).

On May 9, 2018, Vontz kited, "still having issues as far as panic attacks and nightmares. Was seeing a therapist and psychologist. The meds I'm on now were only for starters any way I can see a doc?" (ECF No. 75-7, PageID.1318) (capitalization and punctuation altered). Hotaling responded, "[y]ou will need to

kite medical and talk with them." (*Id.*). Hotaling notes that as he is not a doctor or a member of medical staff, he would have been unable to prescribe or alter Vontz's medication. (ECF No. 117-1, PageID.2254-2255).

Vontz's next kite to Hotaling was on November 2, 2018. He thanked Hotaling for "keeping [his] word," and complained that he had not been able to contact his family at all, including his sister. (ECF No. 75-7, PageID.1318). A separate employee responded that Hotaling was not in that day, but they would forward the message to him. (*Id.*). Hotaling notes that Vontz admitted he does not allege any mistreatment beyond November 7, 2018, when he was transferred to the Michigan Department of Corrections, and that he does not allege any physical injuries. (ECF No. 75-2, PageID.1161).

III.   Standard for Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

7

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Vontz is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV. Discussion

A. Physical Injury Under 42 U.S.C. § 1997e(e)

Hotaling argues that summary judgment is appropriate on Vontz's claim of

deliberate indifference because he has not established a "physical injury" as required under 42 U.S.C. § 1997e(e). "While Section 1997e(e) 'may well present the highest concentration of poor drafting in the smallest number of words in the entire United States Code,' John Boston, *The Prison Litigation Reform Act: The New Face of Court Stripping*, 67 BROOK. L. REV. 429, 434 (2001), [a court must] nonetheless begin with the statute's plain language." *Aref v. Lynch*, 833 F.3d 242, 263 (D.C. Cir. 2016). 42 U.S.C. § 1997e(e) provides :

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

The Sixth Circuit has applied Section 1997e(e) strictly, requiring prisoners to plead physical injuries in their complaints in order to satisfy it. For example, in *Harden-Bey v. Rutter*, 524 F.3d 789, 795-796 (6th Cir. 2008), the Sixth Circuit held that "[e]ven if we read [the prisoner's] complaint to allege emotional or mental injuries, [he] cannot bring an Eighth Amendment claim for such injuries because he did not allege a physical injury." (citing § 1997e(e)).

Hotaling acknowledges that § 1997e(e) does not foreclose claims brought to redress constitutional injuries that are distinct from mental and emotional injuries. In *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015), the Sixth Circuit held that notwithstanding the § 1997e(e) preclusion of mental or emotional claims without a prior showing of physical injury, "the plain language of the statute does not bar

9

claims for constitutional injury that do not also involve physical injury."

Specifically, *King* involved a First Amendment claim. The Sixth Circuit held as follows:

> Accordingly, we hold that § 1997e(e) does not foreclose claims that allege violations of First Amendment-protected rights as injuries. *King's claim alleges a constitutional injury distinct from any mental or emotional injury he might have suffered*: He claims that he was placed in a higher security facility for approximately ten months in retaliation for his exercise of his First Amendment rights. While at the more secure facility, King suffered infringements on his First Amendment rights because additional restrictions on his movements hindered his attempts to collect affidavits and declarations from other prisoners to assist in the *Cain* litigation. *Because King's claim is not "for mental or emotional injury," § 1997e(e) does not preclude his claim merely because he does not also claim physical injury*.

*Id*. (emphasis added).

Here, Vontz is not bringing a First Amendment claim, nor seeking relief for any constitutional injuries distinct from his alleged emotional injuries.[3] He also did not suffer any physical injuries. He said as much at his deposition, when he testified at that he suffered no physical injuries, and that his only injuries were "mental and emotional." (ECF No. 75-2, PageID.1161).

Vontz argues in response that § 1997e(e) permits prisoners to seek nominal

---

[3] Apart from monetary damages, Vontz's complaint also asks for injunctive relief. However, since he is no longer incarcerated at the Monroe County Jail, that request is moot. *See Kensu v. Haight*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 F.App'x 115, 117 (6th Cir. 2003) (explaining that a prisoner's claim for injunctive relief against prison officials became moot when he was transferred from the prison of which he complained to a different facility).

and punitive damages without a showing of physical injury, citing *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). But in *Lucas*, the Sixth Circuit remanded dismissal of a prisoner's complaint based on the suggestion that the prisoner may have suffered "the commission of [a] sexual assault," which is a specific carve out under § 1997e(e) for which the mental or emotional injury limitation does not apply.

Vontz also cites *Aref v. Lynch*, *supra*, for the contention that he may seek "other relief" without a prior showing of physical injury. But this is in reference to the same constitutional injuries (retaliatory placement in segregation) considered in *King v. Zamiara*, which do not apply here.

In sum, the record – consisting of the medical evidence and Vontz's deposition testimony described above – shows that Vontz did not suffer a physical injury related to his treatment from Hotaling. Summary judgment is therefore warranted under 42 U.S.C. § 1997e(e) for failure to establish, or create a genuine issue of material fact as to whether he suffered, a physical injury.

### B. Deliberate Indifference to Serious Medical Needs

Putting aside Vontz's failure to establish a physical injury, Hotaling also argues that Vontz's deliberate indifference claim fails on the merits. Under the Fourteenth Amendment, pretrial detainees have a due process right to medical care. Historically, claims of deliberate indifference under the Fourteenth Amendment

have been analyzed consistent with Eighth Amendment claims of plaintiffs who have been analyzed consistent with Eighth Amendment claims of plaintiffs who are serving prison sentences in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992); *see also Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("This Court has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.' ") (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

Under the Eighth Amendment approach, a deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id*. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Recently, in *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 591–594 (6th Cir. 2021), the Sixth Circuit modified the test for deliberate indifference claims under the Fourteenth Amendment Due Process Clause for cases involving pretrial detainees. The first, objective prong—that a plaintiff must show a sufficiently

12

serious medical need remains the same as under the Eighth Amendment test. *See Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) ("*Brawner* left the 'objectively serious medical need' prong untouched."). However, *Brawner* modified the subjective prong.

The *Brawner* court explained that the second prong now requires a pretrial detainee to show that the defendant's "action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [the pretrial detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the pretrial detainee], even though a reasonable official in [the defendant's] position would have known that the serious medical need posed an excessive risk to [the pretrial detainee's] health or safety. *Brawner*, 14 F.4th at 597. A plaintiff must establish "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 596 (internal quotation marks and citation omitted)*; see also Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 606 (6th Cir. 2022) ("*Brawner* modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness."). Thus, for purposes of an inadequate medical care claim under the Fourteenth Amendment, a "plaintiff must show (1) that [he or she] had a sufficiently serious medical need and (2) that each defendant 'acted deliberately (not accidentally), [and] also recklessly 'in the face of

13

an unjustifiably high risk of harm that is either known or so obvious that it should be known.' " *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596).

Under the post-*Brawner* framework, the first question is whether Vontz had a sufficiently serious medical condition. In *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004), the Sixth Circuit held that "[a] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotation marks and citations omitted).

Here, Vontz has been diagnosed with depression and has a history of suicide attempts. In *Comstock*, 273 F.3d at 703, the Sixth Circuit held that "a prisoner's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." (internal quotation marks and citations omitted). Vontz has therefore satisfied the first prong of the *Brawner* test.[4]

As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and

---

[4] That Vontz has shown an "objectively serious medical need" under *Brawner* does not negate the requirement under 42 U.S.C. § 1997e(e) that he allege a prior physical injury in order to even bring a due process claim under § 1983. As set forth above, this case could be dismissed under § 1997e(e) without addressing Vontz's underlying constitutional claim.

14

patient as to the better course of treatment, does not equate to a constitutional violation, either under the Eighth or the Fourteenth Amendment. *See Brawner*, 14 F.4th at 596 (stating that a plaintiff must show "more than negligence"); *see also Comstock*, 273 F.3d at 703 (explaining that "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment"); *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Here, there is no dispute that Hotaling provided some treatment to Vontz, as the parties agree they met in April 2018 for a mental health assessment. *See* ECF No. 117-1, PageID.2259-2263. At that time, Vontz reported anxiety and stress, but denied any suicidal or homicidal ideation.

The parties do dispute whether Hotaling met with Vontz at an earlier date, in March. Hotaling contends that they did, which is supported by medical and jail records, and that Vontz denied suicidal and homicidal ideation at this time as well. *See id.*, PageID.2253-2254, 2257; ECF No. 74-3, PageID.1021. For his part, Vontz contends in both his verified third amended complaint and at his deposition that this meeting did not occur, and that his signature on a release from suicide precautions form was forged by, or with the knowledge of, Hotaling. (ECF No. 86,

15

PageID.1694; ECF No. 75-2, PageID.1160, 1174).

If Vontz is to be believed, not only is Hotaling misrepresenting that the parties met in March, but two sets of records have been fabricated to reflect that this meeting did in fact occur. Vontz offers no evidence to support these assertions or otherwise cast doubt on the accuracy of the events and records. Furthermore, to the extent that his signature on the release form was forged, Vontz has provided no evidence that Hotaling commissioned this forgery or had knowledge of it.

Vontz's own allegations also work against him regarding this claim. For instance, Vontz contends that he was placed on suicide watch despite the fact that "at no time did [he] communicate suicidal thoughts, only acute severe anxiety." (ECF No. 86, PageID.1693). Additionally, when he reached out later to Hotaling via kite, Hotaling responded to ask Vontz what he needed, and Vontz did not reply. (ECF No. 75-7, PageID.1318). Vontz instead "abandoned further futile attempts to see a mental health worker." (ECF No. 75-2, PageID.1217). Vontz also kited Hotaling in May, complaining about his symptoms and medication, and Hotaling informed him that he would need to "kite medical and talk with them" about medication concerns. (ECF No. 75-7, PageID.1318).

The medical record from April 20, 2018, which is not in dispute, also belies Vontz's allegation that he had not previously spoken to Hotaling. The "presenting problem" from Vontz states that he is "ASKING TO SPEAK TO JOSH *AGAIN*

16

STILL HAVEN'T SEEN HIM." (ECF No. 117-1, PageID.2260) (emphasis added). This suggests that the two had met previously, though it may not have been in-person.

Even assuming that all of Vontz's allegations are true, Vontz has not shown that his treatment from Hotaling amounted to more than a disagreement about the adequacy of his treatment. He has not shown that his release from suicide watch was unreasonable or reckless, as he alleged that he was not suicidal when he was placed on suicide watch, nor in April 2018, after he had been removed from it. And he has not supported his claim that if his signature on the release form was indeed forged, that Hotaling committed or knew of this forgery. Thus, Vontz cannot show that Hotaling acted "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.' " *Helphenstine*, 60 F.4th 305 (quoting *Brawner*, 14 F.4th at 596). Hotaling is therefore entitled to summary judgment on the merits of Vontz's claim.

V. Conclusion

For the reasons stated above, it is RECOMMENDED that Hotaling's motion for summary judgment, (ECF No. 117), be GRANTED and that Vontz's remaining claims be DISMISSED WITH PREJUDICE.

Dated: March 6, 2023　　　　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan　　　　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 3, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
